**Wayne THOMAS, Plaintiff,**

**v.**

**William ZINKEL, et al., Defendants.**

**No. CIV. A. 00-6020.**

United States District Court,
E.D. Pennsylvania.

July 26, 2001.

Wayne Thomas, Graterford, PA, pro se.

Lynne W. Coughlin, A. Tracey Campbell, White and Williams, LLP, Paoli, PA, for defendants.

*MEMORANDUM*

JOYNER, District Judge.

This is a prisoner civil rights case brought by Plaintiff Wayne Thomas ("Plaintiff"), a prisoner currently incarcerated at the State Correctional Institution at Graterford ("SCI–Graterford"), against several prison and medical officials, including William Zinkel ("Zinkel"), School Principal at SCI–Graterford; David DiGuglielmo ("DiGuglielmo"), Deputy Superintendent for Facility Management at SCI–Graterford; Terrance Swartz ("Swartz"), Maintenance Supervisor at SCI–Graterford; Correctional Physicians Services, Inc. ("CPS"); Frank Botto ("Botto"), CPS's Administrator; Dr. Emre Beken ("Beken"); Dr. Baddick ("Baddick"), Medical Director at SCI–Graterford; and Julie Knauer ("Knauer"), Correctional Health Care Administrator (collectively "Defendants"). In his Complaint, Plaintiff alleges that various Defendants violated his federally protected civil rights under the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. In addition, Plaintiff alleges several state common law claims.

Presently before the Court are: (1) Plaintiff's Motion to Amend; (2) Zinkel, DiGuglielmo, Vaughn, Swartz, and Knauer's ("Prison Defendants") Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6); and (3) CPS, Beken, and Botto's ("Medical Defendants") Motion to Dismiss pursuant to Rule 12(b)(6) and/or for Summary Judgment. For the reasons that follow we will grant all of the Motions before the Court.

## BACKGROUND

In August 1998, Plaintiff was assigned to the "school area" within SCI–Graterford to work as a typewriting clerk. The typewriting area where Plaintiff worked had a roof leak that allowed rain water to enter the room. Plaintiff was directed by Zinkel to clean the area and to attempt to divert the leaking water. On May 18, 1999, while attempting to repair the leak, Plaintiff slipped and fell from the ledge he was standing on and suffered several injuries to his lower back region.

Immediately after his fall, Plaintiff was taken to the prison hospital and received medical treatment from the Physician's Assistant on duty. In the months that followed, Plaintiff received a variety of tests, prescriptions, and ongoing diagnoses from several different physicians. Despite this continuing treatment, Plaintiff's injuries from the fall persisted, and he became increasingly unsatisfied with his doctors' refusal to order certain tests and their care in general. Following his injury, Plaintiff filed a variety of informal and formal prison grievances complaining about the unsafe conditions that led to his fall and the shortcomings of the medical care he received. Plaintiff filed the instant Complaint in this Court on December 20, 2000.

## DISCUSSION

I. *Motion to Amend*

In the midst of Defendants' dispositive motions, Plaintiff has filed a Motion to Amend. Plaintiff's Motion seeks to amend the Complaint to reflect that Plaintiff's claims against DiGuglielmo are brought against him in his individual capacity. Because Defendants indicate no opposition to this Motion, and because courts freely grant leave to amend, we will grant Plaintiff's Motion to Amend. *See* Fed.R.Civ.P. 15(a).

II. *Dispositive Motions*

A. *Legal Standards*

When deciding a Rule 12(b)(6) motion, a court must view all facts, and reasonable

inferences drawn therefrom, in the light most favorable to the non-movant. *See, e.g., Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). Dismissal is appropriate only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

In contrast, when deciding a motion for summary judgment under Rule 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999). Although a court should view all facts in the light most favorable to the non-movant, the non-movant must, through affidavits, admissions, depositions, or other evidence demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the non-movant fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the movant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Medical Defendants' Motion to Dismiss and/or for Summary Judgment*

#### 1. *Section 1983 Claims*

To make out a successful claim under § 1983, a prisoner must demonstrate that prison authorities were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). As the Supreme Court further clarified:

> a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In cases involving medical care, a prisoner's claims of negligent diagnosis or treatment do not rise to the level of deliberate indifference. *Estelle*, 429 U.S. at 106, 97 S.Ct. 285 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Parham v. Johnson*, 126 F.3d 454, 458 n. 7 (3d Cir.1997) (recognizing "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference' "). In addition, physicians' decisions not to perform particular tests or diagnostic measures on a prisoner will not support a § 1983 claim because these decisions are considered medical judgments that are non-actionable. *Estelle*, 429 U.S. at 107, 97 S.Ct. 285; *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir.1987) (inmate's complaints about medical care "merely reflect a disagreement with doctors over the proper means of treat[ment]."); *United States ex rel. Walker v. Fayette County, Pennsylvania*, 599 F.2d 573, 575 n. 2 (3d Cir.1979) (noting that "where dispute is over adequacy of the treatment, federal courts are generally reluctant to second guess a medical judgment and to constitutionalize claims which sound in state tort law."). Consequently, for an Eighth Amendment claim to succeed based on improper medical treatment, the prisoner must show that treatment consisted of "act[s] which were either intentionally injurious, callous, grossly negligent, shocking to the conscience, un-

conscionable, intolerable to the fundamental fairness or barbarous." *Miller v. Hoffman*, No. CIV.A. 97–7987, 1999 WL 415397, at *5 (E.D.Pa. June 22, 1999) (quoting *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir.1978)).

Here, Plaintiff takes issue with the type and extent of care he received for his injuries. Specifically, Plaintiff argues that he was denied a barium study and a sigmoidoscopy examination, and that the other treatments he did receive were administered in an untimely manner. Even accepting all of Plaintiff's allegations as true, it is clear from the Complaint and Plaintiff's own admissions that he received prompt initial treatment for his injury and consistent continuing care thereafter. While Plaintiff may have disagreed with aspects of his medical care, he makes no allegation of intentionally injurious conduct or any sort of unconscionable acts. As a result, we will grant the Motion with respect to Beken and Botto. *See, e.g., Estelle*, 429 U.S. at 107, 97 S.Ct. 285; *Boring*, 833 F.2d at 473.

Next, we examine Plaintiff's § 1983 claims against CPS. CPS is a private corporation "under contract with the Pennsylvania Department of Corrections to provide ongoing medical services to the inmates incarcerated at [SCI–Graterford]." (Compl. at ¶ 7). The Supreme Court has determined a local governmental entity may be a "person" for purposes of § 1983 liability. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability of such entities may not rest on respondeat superior, but rather must be based upon a governmental policy, practice, or custom that caused the injury. *Id.* at 690–94, 98 S.Ct. 2018. The same standard applies to a private corporation, like CPS, that is acting under color of state law. *See Miller v. Hoffman*, No. CIV.A. 97–7987, 1998 WL 404034, at *4 (E.D.Pa. July 7, 1998) (analyzing defendant CPS under *Monell* standard).

Plaintiff has failed to identify a CPS policy, practice or custom that caused an injury. In his Complaint, Plaintiff states that his injuries were the "proximate result of negligence of [CPS] acting through its agents, or employees in failing to adequately examine and provide treatment for this Plaintiff." (Compl. at ¶ 29). As we have noted, a plaintiff may not proceed on a theory of respondeat superior. Moreover, Plaintiff does not suggest any deliberate indifference on the part of CPS or any of its employees toward Plaintiff's medical needs. As a result, we will grant Medical Defendants' Motion with respect to CPS.

2. *State claims*

Because we will dismiss all of the federal claims against CPS, Beken and Botto, we must decide whether to exercise supplemental jurisdiction over Plaintiff's state law claims. A court "may decline to exercise supplemental jurisdiction [over state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). We decline to exercise supplemental jurisdiction over Plaintiff's potential state law claims against Medical Defendants. If he so chooses, Plaintiff may refile those state claims in the appropriate state court.

C. *Prison Defendants' Motion to Dismiss*

1. *Failure to Exhaust*

Prison Defendants first argue that Plaintiff has failed to exhaust his administrative remedies. We disagree.

The Prison Litigation Reform Act provides, in pertinent part, that:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Before filing a federal action, a plaintiff-prisoner must exhaust his administrative remedies, even if the relief sought is not available through the administrative process. *See Booth v. Churner,* 206 F.3d 289, 300 (3d Cir.2000). Section 1997e(a) "specifically mandates that inmate-plaintiffs exhaust their available administrative remedies." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000). As a result, the Third Circuit has concluded that "it is beyond the power of this court ... to excuse compliance with the exhaustion requirement." *Id.* (internal quotations omitted). However, notwithstanding the bright-line rule requiring administrative exhaustion, "compliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77–78. *See also Ahmed v. Sromovski,* 103 F.Supp.2d 838, 842–43 (E.D.Pa.2000) (discussing exhaustion requirement).

In this case, we find that Plaintiff has substantially complied with the administrative remedy scheme. On February 25, 2000, Plaintiff filed Grievance No. GRA–0232–2000 and thereafter appealed the denials of that grievance at the second and third stages of the administrative scheme. Prison Defendants do not dispute that Plaintiff properly exhausted his administrative remedies for the claims in this grievance. They contend, however, that Plaintiff only addressed his medical claims in this grievance and failed to exhaust with respect to his dangerous working conditions claim. The text of Plaintiff's initial grievance specifically refers to the water leak in the typing area, the alleged danger the leak posed, and the injury Plaintiff suffered when attempting to repair the leak. (Compl. at Ex. C). Plaintiff also refers in his grievance to his previous written requests to have the leak fixed. (*Id.*). Likewise, at each appeal stage, Plaintiff again refers to the failure of prison officials to remedy the unsafe working conditions in the typing area, despite their acknowledgment of a problem. (*Id.* at Ex. F & H). While Plaintiff's grievance may have been more specific regarding his medical claims, it is evident that he was also grieving the dangerous conditions in the typing area. Based on that finding, we conclude that Plaintiff has substantially complied with the administrative scheme available to him. Accordingly, we reject Prison Defendants failure to exhaust argument.

2. *Medical Care Claims against Vaughn and Knauer*

Next, Prison Defendants argue that Plaintiff cannot maintain his medical care claims against Vaughn and Knauer because neither official was a medical doctor or involved in Plaintiff's medical care. We agree.

Prison authorities "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Miller,* No. CIV.A. 97–7987, 1999 WL 415397, at *11 (citing *Durmer v. O'Carroll,* 991 F.2d 64, 69 n. 14 (3d Cir.1993)). Similarly, health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor. *See, e.g., id.; Hull v. Dotter,* No. CIV.A. 96–3087, 1997 WL 327551, at *4 (E.D.Pa. June 12, 1997); *Freed v. Horn,* No. CIV.A. 95–2824, 1995

WL 710529, at *3–*4 (E.D.Pa. Dec.1, 1995).

Vaughn is the Warden for SCI–Graterford, and Knauer is the Administrator for CPS. Under the clear precedent of *Durmer* and its progeny in this circuit, we conclude that neither Vaughn, nor Knauer can be found liable under § 1983 for Plaintiff's medical care claims simply by virtue of their supervisory roles. *See Durmer,* 991 F.2d at 69; *Miller,* 1999 WL 415397, at *11–*12.

3. *Dangerous Working Conditions Claims*

Prison Defendants also move to dismiss Plaintiff's § 1983 claim based upon the dangerous working conditions in the typing area. In Count I of his Complaint, Plaintiff alleges that "Zinkel maintained operating the Typewriter service open to the general population even after receiving clear knowledge of the dangerous condition ...." (Compl. at ¶ 24). Plaintiff later alleges more generally that "all defendants herein this complaint knew that the work area was unsafe ... but did chose [sic] to deliberately breach their supervising capacity by not compelling defendant Swartz and/or defendant Zinkel to provide repairs ...." (*Id.* at ¶ 26). Finally, Plaintiff concludes Count I by alleging that all Defendants knew that they were placing Plaintiff "in danger of harm and injury, chose to ignore official policy on the matter and acted with 'deliberate indifference' and 'callous disregard' to Plaintiff's rights ...." (*Id.* at ¶ 27).

Even under the more lenient standard with which we evaluate a pro se litigant's pleadings, Plaintiff has failed to state a cognizable § 1983 claim. Essentially, Plaintiff alleges that the various Defendants knew of the unsafe condition and should have rectified it with certain repairs. Although Plaintiff uses the constitutional code words "deliberate indifference," he fails to allege that any of the Prison Defendants subjectively knew and appreciated a substantial risk. At most, Plaintiff has alleged a negligence claim. It is, however, well-established that negligence does not transform into a constitutional claim solely because it is committed under color of state law. *See, e.g., Estelle,* 429 U.S. at 105–06, 97 S.Ct. 285. Because we conclude that there is no set of facts under which Plaintiff could prove a violation of his constitutional rights, we will grant Prison Defendants' Motion with respect to the § 1983 dangerous condition claim.

4. *State Claims*

For the same reasons articulated above in Part II.B.2 *supra,* we will decline to exercise supplemental jurisdiction over the state law claims against the Prison Defendants.[1]

## CONCLUSION

An appropriate Order follows.

## *ORDER*

AND NOW, this 26th day of July, 2001, upon consideration of Defendants Frank Botto, Emre Beken, MD, and Correctional Physicians Services, Inc.'s Motion to Dismiss and/or for Summary Judgment (Document No. 20); Defendants William Zinkel, David DiGuglielmo, Donald T. Vaughn, Terrance Swartz, and Julie Knauer's Motion to Dismiss (Document No. 13); and Plaintiff's Motion to Amend (Document No. 22), it is hereby ORDERED that the

1. As a result of our disposition of the present motions, all claims against the Prison Defendants and Medical Defendants are dismissed. The Court notes that Defendant Baddick was not party to either motion and, therefore, all claims alleged against him are still pending.

Motions are GRANTED. Accordingly, all federal claims against the aforementioned Defendants are DISMISSED WITH PREJUDICE, while all state law claims against those Defendants are DISMISSED WITHOUT PREJUDICE.