**Robert LINDSAY, Plaintiff,**

v.

**Walter P. DUNLEAVY, Warden of Philadelphia County Prison Known as CFCF; Philadelphia County; and Doctor Eric Amoh, Employed by the CFCF, Defendants.**

No. 00–1532.

United States District Court,
E.D. Pennsylvania.

Dec. 20, 2001.

Robert Lindsay, P.P. DX–5524, SCI—Houtzdale, Houtzdale, PA, pro Se.

Charles T. Roessing, Lynne A. Coughlin, White and Williams, Paoli, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the Motion to Dismiss and/or for Summary Judgment of Defendants, Warden Walter P. Dunleavy ("Warden Dunleavy"), Philadelphia County (the "County") and Eric Amoh,

P.A.[1] ("Amoh"). Plaintiff, Robert Lindsay ("Lindsay" or "Plaintiff"), filed his initial complaint in this action on March 24, 2000. However, in the initial complaint, Plaintiff did not specifically name Defendants Warden Dunleavy and Amoh, so he filed an amended complaint on February 5, 2001 to name them.[2] Plaintiff's amended complaint alleges the following claims: a § 1983 claim against Amoh for failing to provide adequate medical treatment; a § 1983 claim against Warden Dunleavy and the County for failing to adequately train, supervise and/or discipline Amoh; and state law claims against all of the Defendants for "official oppression," reckless endangerment of another person, simple assault, aggravated assault, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.

All Defendants seek to dismiss each of the claims against them. For the following reasons, the § 1983 claims against Amoh, Warden Dunleavy, and the County are dismissed. Further, the Court will not exercise pendent jurisdiction over the state law claims. Rather, the Court will dismiss those claims without prejudice to allow Plaintiff the opportunity to re-file those claims in state court if he so chooses.

## BACKGROUND

The facts, taken from Plaintiff's complaints and taken in the light most favorable to Plaintiff, are as follows. Plaintiff was incarcerated at the Philadelphia County Prison ("CFCF") on February 18, 1999. While at CFCF, Plaintiff was assigned a job serving food to the other inmates and cleaning up after them.

On April 13, 1999, while Plaintiff was working, he was punched in the jaw by another inmate. Plaintiff alleges that soon after the incident he was taken to the medical facility at CFCF for treatment due to the pain he was experiencing in his jaw. Plaintiff was treated by Amoh who examined Plaintiff's mouth. Amoh allegedly gave Plaintiff cotton to bite on to stop the bleeding and gave him some pain medication. Amoh allegedly told Plaintiff his jaw was "alright" and that it would take time to heal.

On April 14, 1999, Plaintiff alleges that he went to see Amoh again because he was still experiencing bleeding and pain in his jaw. Plaintiff alleges that Amoh again examined him and increased the pain medication.

On April 15, 1999, Plaintiff alleges that he again went to see Amoh and explained to Amoh that he was in extreme pain and that his jaw was swollen and his face was numb. Plaintiff requested that Amoh order an x-ray because Plaintiff thought his jaw was broken. Plaintiff alleges that Amoh did not order x-rays, but rather told Plaintiff that the jaw would take time to heal.

On April 16, 1999, Plaintiff alleges that he went to see Amoh again with the same complaints as on the 15th. Plaintiff alleges that Amoh again told Plaintiff that his jaw would take time to heal.

On April 18, 1999, Plaintiff alleges that he again saw Amoh with the same com-

---

1. Plaintiff refers to Amoh as Dr. Amoh. However, Amoh represents that he is not a physician but a physician's assistant.

2. Plaintiff filed a second amended complaint on August 20, 2001. However, the second amended complaint does not change the facts alleged or the relief requested in the original or first amended complaints. Rather, Plaintiff's second amended complaint discusses the problems Plaintiff had with his "jailhouse" lawyer and indicates that if Plaintiff's other complaints were deficient it was solely due to the bad advice of the "jailhouse" lawyer.

plaints. Plaintiff alleges that Amoh told him that if his jaw was broken he would not be able to talk.

On April 20, 1999, Plaintiff was transferred to the State Correctional Institution at Graterford ("Graterford"). Upon arrival at Graterford, Plaintiff told the medical department what had happened to his jaw and that he was in extreme pain.

On April 21, 1999, the medical department at Graterford x-rayed Plaintiff's jaw and found that his jaw was broken. On April 27, 1999, Plaintiff alleges that he was transferred to an outside hospital where his jaw was wired shut.

## DISCUSSION

### I. Legal Standard

When deciding a 12(b)(6) motion, a court must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-movant. Fed. R.Civ.P. 12(b)(6); *see also Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). Dismissal is appropriate only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Further, because Plaintiff is proceeding *pro se,* the Court will construe his complaint liberally and hold it to a less stringent standard than a pleading drafted by an attorney. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

### II. Exhaustion of Administrative Remedies

Defendants first argue that Plaintiff's complaint must be dismissed because he has not alleged that he exhausted all administrative remedies as required by the Prison Litigation Reform Act ("PLRA").[3] Plaintiff responds that he has exhausted his administrative remedies, but he does not have access to the prison's files which would demonstrate exhaustion.

The PLRA requires a prisoner to exhaust all administrative remedies before bringing a suit regarding prison conditions. *See* 42 U.S.C.A. § 1997e(a); *see also Nyhuis v. Reno,* 204 F.3d 65, (3d Cir.2000) (holding that exhaustion of available remedies is condition precedent to filing a law suit). Specifically, section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

■ In the instant case, Defendants argue that Plaintiff did not exhaust the administrative remedies available at CFCF. Defendants attach the affidavit of Warden Dunleavy, the Warden of CFCF, to attest that Plaintiff did not exhaust the remedies available to him at CFCF. However, by the time Plaintiff learned that his jaw was broken, Plaintiff had already been transferred to Graterford. Defendants do not provide the Court with any information concerning what sort of administrative remedies were available at either institution, but particularly what sort of administrative remedies are available at Graterford for an inmate complaining of conduct that occurred at a different facility.

---

**3.** The Third Circuit has not addressed whether the exhaustion requirement of the PLRA must be pled in the Complaint or raised as an affirmative defense. *See, e.g., Gregory v. PHS,* *Inc.,* CIV.A. No. 00–467–SLR, 2001 WL 1182779, *2, 2001 U.S. Dist. LEXIS 15765, *7 (D.Del. Sept.21, 2001).

Because there remain questions of fact regarding 1) whether Plaintiff exhausted the available administrative remedies and 2) whether there were any administrative remedies available to exhaust, the Court will deny the Motion to Dismiss on this basis. *See* 42 U.S.C.A. § 1997e(a) (must exhaust "available" administrative remedies).

### III. § 1983 Claims Against Eric Amoh, P.A.

In *Estelle v. Gamble*, the Supreme Court determined that "deliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). In *Farmer v. Brennan* the Court clarified the state of mind required to show deliberate indifference by holding that a

> prison official cannot be found liable under the Eighth Amendment … unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.

511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

A prisoner's claims of negligent diagnosis or treatment, do not rise to the level of deliberate indifference. *Estelle*, 429 U.S. at 105–06, 107, 97 S.Ct. 285 (finding that "in the medical context, … a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *see also Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) ("allegations of 'inadvertent failure to provide adequate medical care' or of 'negligent … diagnosis' fail to establish the requisite culpable state of mind") (internal citations omitted); *Parham v. Johnson*, 126 F.3d 454, 458 n. 7 (3d Cir.1997) (recognizing "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference'").

Further, a doctor's decision not to order specific forms of diagnostic treatment, an x-ray for example, constitutes medical judgment, which is not actionable. *Estelle*, 429 U.S. at 107, 97 S.Ct. 285. The Third Circuit has stated that " '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law.' " *United States ex rel. Walker v. Fayette County, Pennsylvania*, 599 F.2d 573, 575 n. 2 (3d Cir.1979) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976)). Moreover, a disagreement between the doctor and the plaintiff as to the medical diagnosis and treatment does not constitute deliberate indifference. *Douglas v. Hill*, CIV.A. No. 95–6497, 1996 WL 716278, *7 (E.D.Pa. Dec.6, 1996) (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir.1987)).

In the instant case, Plaintiff alleges that Amoh's failure to diagnose his broken jaw and failure to order an x-ray, from which he could have diagnosed the fracture and which Plaintiff requested, constitutes deliberate indifference.

In response, Amoh does not argue that Plaintiff's medical needs were not "serious." Instead, Amoh argues that Plaintiff has not sufficiently pled that he acted with deliberate indifference. We agree.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to plead any allegations from which deliber-

ate indifference could be inferred. For example, Plaintiff has not pled that Amoh recognized Plaintiff's need for an x-ray and then refused to order it. Nor has Plaintiff made any other allegations which demonstrate, or from which it could be inferred, that Amoh possessed the requisite mental intent to sustain a deliberate indifference claim. *See, e.g., Wilson,* 501 U.S. at 297, 111 S.Ct. 2321 (allegations of inadvertent failure to provide adequate medical care or negligent diagnosis do not establish requisite mental intent); *Thomas v. Zinkel,* 155 F.Supp.2d 408, 412 (E.D.Pa.2001) (granting medical defendants' motion to dismiss prisoner's § 1983 claim); *Muhammad v. Schwartz,* No. C IV.A. 96–6027, 1997 WL 43015, \*\*4–5 (E.D.Pa. Jan.27, 1997) (same).

Absent allegations that Amoh possessed the requisite intent to establish deliberate indifference, Plaintiff has not properly pled a § 1983 action against Amoh. *See Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Wilson,* 501 U.S. at 297, 111 S.Ct. 2321. Therefore, Plaintiff's § 1983 claims against Amoh will be dismissed.[4]

### IV. § 1983 Claims Against Warden Dunleavy and the County

Plaintiff argues that Warden Dunleavy and the County were deliberately indifferent to his medical needs by failing to adequately train, supervise, and/or discipline Amoh.

#### A. § 1983 Claims Against Warden Dunleavy

■ "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (internal citations omitted). To maintain a failure to supervise claim, a plaintiff must "(1) identify with particularity what the supervisory official failed to do that demonstrates his deliberate indifference, and (2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury." *Kis v. County of Schuylkill,* 866 F.Supp. 1462, 1474 (E.D.Pa.1994) (citing *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir.1989)). In order to establish deliberate indifference, plaintiff must demonstrate that the "official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.

■ Plaintiff has not sufficiently pled a failure to supervise claim against Warden Dunleavy. Plaintiff has not alleged that Warden Dunleavy knew of and disregarded an excessive risk to Plaintiff's safety. Further, Plaintiff has not alleged any facts regarding Warden Dunleavy from which personal involvement can be inferred. In fact, Plaintiff has not made *any* factual allegations at all regarding Warden Dunleavy.[5] Therefore, Plaintiff's § 1983

---

**4.** In addition to the Eighth Amendment claims, Plaintiff purports to bring claims for violations of his Fourth, Fifth, and Ninth Amendment rights. However, there are no allegations in the complaint that even remotely support violations of those Amendments. Therefore, to the extent Plaintiff attempts to

bring a claim under those Amendments under the facts alleged, those claims are dismissed.

**5.** In Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss and/or Summary Judgment, Plaintiff states that "Plaintiff has made Walter Dunleavy well apprised of need for medical treatment by view of his medical

claims against Warden Dunleavy will be dismissed.[6] *See, e.g., Cropps v. Chester County Prison*, CIV.A. No. 00–182, 2001 WL 45762, *3 (E.D.Pa. Jan.19, 2001) (dismissing a prisoner's § 1983 claim against a warden for failure to plead sufficient facts), *compare with Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir.1996) (prisoner plaintiff sufficiently pled § 1983 against prison officials where Plaintiff pled that he had written letters to the administration concerning all of the matters set forth in the complaint and that his requests for relief were refused).

**B. § *1983 Claims Against the County***

 A municipality cannot be held liable on the basis of *respondeat superior*. *See Monell v. Dep't. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). In order to sustain a claim against a municipality, a plaintiff must demonstrate that the constitutional violation at issue was caused by "a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996); *see also Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (plaintiff must identify municipal policy or custom to impose liability on municipality).

Plaintiff has not sufficiently pled a § 1983 violation against the County. Plaintiff has not made any factual allega-

tions regarding the County much less allegations regarding any customs or policies of the County. Therefore, Plaintiff's § 1983 claims against the County are dismissed. *See Brown*, 520 U.S. at 403–04, 117 S.Ct. 1382.

**V. State Law Claims**

Because we will dismiss all of the federal claims against the Defendants, we must decide whether to exercise supplemental jurisdiction over Plaintiff's state law claims. A court may "decline to exercise supplemental jurisdiction [over state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). We decline to exercise supplemental jurisdiction over Plaintiff's potential state law claims against the Defendants. Plaintiff may re-file those claims in the appropriate state court if he so chooses. *See Muhammad*, 1997 WL 43015 at *6. We do not express any opinion as to the outcome of these state law claims.

An appropriate Order follows.

---

staff." [sic] *See* Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss and/or Summary Judgment at ¶ 21. In this statement, Plaintiff appears to be attempting to hold Warden Dunleavy liable on the basis of *respondeat superior*, which is insufficient. *See Rode*, 845 F.2d at 1207. Further, other than this conclusory statement, Plaintiff has not made any factual allegations to suggest that Warden Dunleavy was aware of Plaintiff's jaw pain. *Id.* (must allege personal involvement with sufficient particularity). Finally, Plain-

tiff has not made this allegation or any other allegations even remotely similar in his original complaint or in either of his amended complaints.

**6.** Defendants also assert that Plaintiff's complaint should be dismissed because they are entitled to immunity. Given our disposition of the case, we do not reach the immunity issue.