IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Josh Clites,                                    :
                                                : No. 55 C.D. 2016
                              Appellant          : Submitted:  May 20, 2016
                                                :
                v.                               :
                                                :
John E. Wetzel, Secretary PA. Doc;              :
John Doe, Director BHCS;                        :
Dorina Varner, CGO; Trevor A.                   :
Wingard, Warden, SCI-SMR;                       :
Brian Hyde, CHCA at SCI-SMR;                    :
Marlene Enedy, RN, ICN,                         :
at SCI-SMR                                      :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  July 28, 2016


        Josh Clites appeals, *pro se*, the order of the Somerset County Court of

Common Pleas (trial court) denying his petition to proceed *in forma pauperis* and

dismissing his complaint pursuant to Pa. R.C.P. No. 240.[1]  We affirm.

---

        [1] Pa. R.C.P. No. 240 states, in pertinent part:

            (b) A party who is without financial resources to pay the costs of
            litigation is entitled to proceed in forma pauperis.

            (c) Except as provided in subdivision (d) [(relating to parties
            represented by an attorney)], the party shall file a petition and an
            affidavit in the form prescribed by subdivision (h).  The petition

**(Footnote continued on next page…)**

In November 2015, Clites filed a complaint under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. §1983,[2] in the trial court against John E. Wetzel, Secretary of the Department of Corrections (Department), and a number of Department employees (collectively, Defendants)[3] to recover damages for the

---

**(continued…)**

> may not be filed prior to the commencement of an action or proceeding . . . .
>
> * * *
>
> (j)(1)  If, simultaneous with the commencement of an action or proceeding . . . a party has filed a petition for leave to proceed in forma pauperis, the court prior to acting upon the petition may dismiss the action [or] proceeding . . . if it is satisfied that the action [or] proceeding . . . is frivolous.

An action is "frivolous" if it lacks any "'arguable basis either in law or in fact.'" *Bailey v. Wakefield*, 933 A.2d 1081, 1083 (Pa. Cmwlth. 2007) (quoting Pa. R.C.P. No. 240(j), comment ).

[2] Section 1983 states, in relevant part:

> Every person who, under color of any . . . regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983.  As the Supreme Court has explained, "th[is] section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).

[3] The other named defendants are:  John Doe, Director of the Department's Bureau of Health Care Services; Dorina Varner, the Department's Chief Grievance Officer; Trevor Wingard, the Warden at the State Correctional Institution at Somerset (SCI-Somerset); Brian **(Footnote continued on next page…)**

improper care that he purportedly received while imprisoned at the State Correctional Institution at Somerset (SCI-Somerset). Clites alleges that he informed the Department that he had Hepatitis C when he was transferred to SCI-Somerset in June 2014, and that he requested treatment and that he was screened by medical staff "who took blood and informed [him] that as soon as they received [his] medical records, that he would be called up to go over his medical history." Complaint at ¶11. He contends that he was again seen by medical staff in August 2014 for more blood work and was told "that his levels were moderately mild." *Id.* at ¶12. He states that when he requested treatment he was told "that he wouldn't be getting treatment because the SC/A st and SGP+/AL-1 levels are to[o] low and with the price of medication [they're] only treating the most extreme case[s]." *Id.*

Clites alleges that he again requested treatment in December 2014 and was told that "'currently all Hep[atitis]-C treatment is on hold until further notice.'" Complaint at ¶13. Clites states that, as a result, he filed a grievance with the Department "raising deliberate indifference, non[-]treatment, emotional distress, mental anguish, humiliation, psychological stress and suffering daily living activities" because "it is commonly known that failure to treat Hep[atitis]-C can lead to liver failure and liver cancer." *Id.* at ¶14. He asserts that the grievance was initially denied and that his appeal was ultimately denied in May 2015. *Id.* at ¶¶15, 16.

Specifically, in upholding the initial response to Clites' grievance, the Department's Chief Grievance Officer stated the following, in relevant part:

---

**(continued…)**

Hyde, the Corrections Health Care Administrator at SCI-Somerset; and Marlene Enedy, a registered nurse at SCI-Somerset.

3

> Your concern of not being provided proper medical care for Hepatitis C was reviewed by the staff of the Bureau of Health Care Services. They reviewed your medical record and determined that the medical care provided was reasonable and appropriate. The DOC/BHCS is re-evaluating our treatment protocol for Hepatitis C given the new guidance issued by the American Association of Liver Diseases and the Infectious Diseases Society of America. As a result, we will continue to monitor patients diagnosed with Hepatitis while we evaluate our treatment options moving forward and develop a new treatment protocol. These clinical decisions are made by your attending practitioner. You are encouraged to participate in your treatment plan and to discuss your concerns or changes of condition with a practitioner. No evidence of neglect or deliberate indifference has been found.

Complaint at Attachment E.

Clites alleges that in October 2015, he was again "called to medical and seen by [a registered nurse] who felt around [his] stomach and informed him that his liver felt inflamed [and] that his levels were moderately mild." Complaint at ¶17. He asserts that he asked about a liver biopsy and treatment for his Hepatitis C and the nurse responded that the "stated levels don't warrant a biopsy for a geno type and further stated that the medication costs a thousand dollars a pill so unless [he] is turning yellow, losing weight, retaining water, or losing his appetite, that he would not be getting treatment" and "[t]hat only the most severe cases are being treated." *Id.* He states that he was informed that "his levels were determined to be: SGOT/AST – 41; SGPT/ALT – 71" at that time and that his next check-up was scheduled for July 2016. *Id.* at ¶¶18, 19; Exhibits F, G.

Based on the foregoing, Clites asserts that Defendants Hyde, Enedy, and Wingard, are "deliberately indifferent" to his "serious medical needs" based on "a policy, custom and routine practice" of denying treatment to inmates with

4

Hepatitis C based on the cost of treatment; Defendants Wetzel, Doe, and Varner, are "deliberately indifferent" to him and similarly situated inmates through "a policy, custom and routine practice" of denying treatment to inmates with Hepatitis C because "it is commonly known that failure to treat Hep[atitis]-C leads to liver failure and/or liver cancer" thereby reducing his and the other inmates' life spans; Defendants Wetzel and Doe have conspired to deny him and the other inmates treatment "due to budgetary concerns" which places him and similarly situated inmates "in danger of liver failure and/or liver cancer, reducing the possible length of life"; and Defendants Wetzel, Doe, Varner, and Wingard have conspired to deny him and similarly situated inmates "adequate medical care, based on a state[-]wide policy, in violation of the First, Eighth and Fourteenth Amendments to the United States Constitution." Complaint at ¶¶20, 21.

Clites alleges that the deliberate indifference and conspiracy to interfere with his constitutional rights have caused "mental anguish, and emotional distress"; "increased risk of liver failure and/or liver cancer"; and "risk of diminished quality of life from hepatic [encephalopathy] which [a]ffects [the] nervous system." Complaint at ¶22. Accordingly, he seeks $1,000,000.00 in compensatory and punitive damages; court costs; declaratory judgment that the failure to treat Hepatitis C is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments; and any other relief that this Court "deems just and proper in the interest of justice." *Id.* at ¶23.[4]

---

[4] It appears that Clites was released from custody and is no longer housed in a Department facility. *See* https://www.vinelink.com/ (last visited June 24, 2016). However, the Defendants have not sought to quash this appeal as moot and Clites alleges, *inter alia*, that their actions have caused harm to his future health. Nevertheless, this change in Clites' status does not affect his stake in the outcome of this litigation or our ability to grant the requested relief. Accordingly, we will not quash this appeal as moot.

Clites also filed an affidavit seeking *in forma pauperis* status in the trial court, alleging that he is unable to pay the fees and costs of prosecuting his civil action because of his financial condition. In December 2015, the trial court filed an order denying Clites' petition to proceed *in forma pauperis* and dismissing the action, stating, in relevant part:

> [U]pon review of the Complaint in the above-captioned action, we determine [Clites'] claims are frivolous and without merit pursuant to [Pa. R.C.P. No. 240(j)(1)] which provides us authority to dismiss a cause of action before acting upon a Petition to Proceed In Forma Pauperis. [Clites] alleges Defendants were deliberately indifferent in failing to provide medical treatment to his "moderately mild" Hepatitis. The Complaint shows medical staff continue to monitor [Clites'] condition and that his levels do not warrant further treatment outside of this continued monitoring. This conduct does not form an actionable case for Deliberate Indifference. *See Christy v. Robinson*, 216 F.Supp. 2d 398, 415-17 (D. N.J. 2002) (finding, as a matter of law, defendants who adopted a course of treatment for plaintiff's Hepatitis-C did not deviate from standard medical practice to meet the threshold for a deliberate indifference claim where staff monitored plaintiff's condition and determined he had not reached the point where an intensive program of drug therapy, such a interferon/ribavirin, would be preferred over current monitoring of his enzymes).

Trial Court 12/4/15 Order.

In this appeal,[5] Clites argues that the trial court erred in denying his petition and dismissing this action as frivolous because he pled a *prima facie* claim of deliberate indifference to his serious medical condition by alleging that

---

[5] This Court's scope of review of the trial court's order denying a petition to proceed *in forma pauperis* is limited to a determination of whether constitutional rights were violated, or whether the trial court abused its discretion or committed an error of law. *Williams v. Syed*, 782 A.2d 1090 (Pa. Cmwlth. 2001).

6

Defendants failed to provide any treatment for his Hepatitis C, which caused his condition to worsen, and that his Eighth Amendment rights were violated because the Department's refusal to treat inmates with Hepatitis C was due solely to cost concerns.

As this Court has explained:

> The United States Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97 [] (1976), that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* at 104 [] (internal citations omitted). The Court clarified that claims of negligent diagnosis or treatment, disagreement as to the course of treatment, and medical malpractice do not rise to the level of a constitutional violation merely because the patient is a prisoner. *Id.* at 106 [.] Rather, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend the 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*
>
> Whether the medical need of an inmate is sufficiently serious to constitute an injury amounting to cruel and unusual punishment is an objective inquiry. *Id.* at 106–107[;] *Farmer v. Brennan*, 511 U.S. 825, 834 [] (1994). Common factors relied upon by the courts to determine if a medical need is sufficiently serious to fall within the ambit of the Eighth Amendment include whether the medical need is: (i) one that has been diagnosed by a physician as requiring treatment; (ii) one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention; (iii) one where denial or delay of treatment causes an inmate to suffer a life-long handicap or permanent loss; (iv) one where denial or delay of treatment results in unnecessary and wanton infliction of pain; (v) one that significantly affects an individual's daily activities; or (vi) one that

7

causes chronic and substantial pain. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The medical need alleged does not need to be current to satisfy the sufficiently serious standard, but may result from a condition of confinement that is sure to or very likely to pose an unreasonable risk of serious damage to future health. *See, e.g., Helling v. McKinney*, 509 U.S. 25, 35 [] (1993) (Eighth Amendment claim could be premised upon future harm to health from exposure to environmental tobacco smoke). To establish a sufficiently serious medical need where the claim is based upon harm to future health, an inmate must allege both that the inmate has been exposed to an unreasonable risk of serious damage to future health and that it would violate contemporary standards of decency to expose anyone unwillingly to such a risk. *Id.* at 36[.]

In addition to satisfying the objective component of an Eighth Amendment claim, a prisoner must also allege acts or omissions that evidence deliberate indifference on the part of prison officials in order to state a cognizable claim that the prisoner's constitutional right to be free from cruel and unusual punishment has been violated. In *Farmer v. Brennan*, the Supreme Court concluded that the inquiry into whether a prison official was deliberately indifferent is a subjective one, requiring the demonstration of a state of mind akin to criminal recklessness, and held that a prisoner must establish that: (i) the prison official knew of and disregarded an excessive risk to inmate health or safety; (ii) the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (iii) the prison official drew the inference. 511 U.S. at 837, 840 [.] The Court also emphasized that the duty of a prison official under the Eighth Amendment is to ensure reasonable safety and that prison officials who respond reasonably to the alleged risk cannot be found liable under the Eighth Amendment, even where the measures taken by prison officials failed to abate the substantial risk. *Id.* at 844-845[.] Examples of

8

circumstances where a prison official has been found to act with deliberate indifference include where the prison official: (i) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (ii) delays necessary medical treatment based on a non-medical reason; (iii) prevents a prisoner from receiving needed or recommended medical treatment; or (iv) persists in a particular course of treatment in the face of resultant pain and risk of permanent injury. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *Monmouth County*, 834 F.2d at 346-347.

*Tindell v. Department of Corrections*, 87 A.3d 1029, 1038-40 (Pa. Cmwlth. 2014).

Moreover, as we have explained:

The deliberate indifference test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'" *Inmates of the Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (citations omitted). Complaints about medical care which "merely reflect a disagreement with the doctors over the proper means" of treating the prisoner's medical condition do not rise to the level of a constitutional violation. *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987)[, *cert. denied*, 485 U.S. 991 (1988)]. "Absent a showing that [prison] officials have engaged in constitutionally impermissible conduct, it is not in the public's interest for the court to usurp the Bureau of Prisons' authority and micro-manage the medical needs of a particular inmate." *Berman v. Lamer*, 874 F.Supp. 102, 106 (E.D. Pa. 1995).

*Kretchmar v. Pennsylvania Department of Corrections*, 831 A.2d 793, 799 (Pa. Cmwlth. 2003), *appeal denied*, 847 A.2d 1289 (Pa. 2004) (footnote omitted). *See also Lindsay v. Dunleavy*, 177 F.Supp. 2d 398, 402 (M.D. Pa. 2001) ("'[W]here a prisoner has received some medical attention and the dispute is over the adequacy

of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law.' Moreover, a disagreement between the doctor and the plaintiff as to the medical diagnosis and treatment does not constitute deliberate indifference.") (citations omitted).

The allegations in Clites' complaint do not establish a valid claim under Section 1983. As outlined above, Clites' blood was tested when he was transferred to SCI-Somerset in June 2014, and again in August 2014, and he was told "that his levels were moderately mild" and "that he wouldn't be getting treatment because the SC/A st and SGP+/AL-1 levels are to[o] low and with the price of medication [they're] only treating the most extreme case[s]." Complaint at ¶¶11, 12. Additionally, the decision denying his grievance appeal states that "the Bureau of Health Care Services . . . reviewed your medical record and determined that the medical care provided was reasonable and appropriate." *Id.* at Attachment E.

Clites was again examined by a registered nurse in October 2015, and was told "that his liver felt inflamed," but "that his levels were moderately mild" and when he asked about a liver biopsy and treatment for his Hepatitis C, the nurse responded that the "stated levels don't warrant a biopsy for a geno type." Complaint at ¶17. When he inquired regarding his blood levels later that month, he was informed that "his levels were determined to be: SGOT/AST – 41; SGPT/ALT – 71," and he was told that his next check-up was scheduled in July 2016. *Id.* at ¶¶17, 18; Attachments F, G.

The foregoing allegations are indicative of a disagreement between Clites and the Department as to whether treatment is appropriate at this time for his Hepatitis C. As noted above, this is the sort of disagreement over medical

10

treatment that does not give rise to a claim under the Eighth Amendment for deliberate indifference. According to Clites' allegations, the Department is aware of and monitoring his Hepatitis C and the Defendants are not displaying deliberate indifference to his serious medical condition. As alleged, and contrary to Clites' argument on appeal, the treatment that he sought for his Hepatitis C was not forthcoming based on his blood test results, and not due solely to cost concerns. As a result, Clites' complaint fails to state a claim under Section 1983 for violation of his constitutional rights, and the trial court did not err in denying his petition to proceed *in forma pauperis* and dismissing his complaint pursuant to Pa. R.C.P. No. 240(j)(1).

Accordingly, the trial court's order is affirmed.


_____
MICHAEL H. WOJCIK, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Josh Clites, : 
                                  : No. 55 C.D. 2016
                Appellant : 
                                    : 
              v. : 
                                    : 
John E. Wetzel, Secretary PA. Doc; : 
John Doe, Director BHCS; : 
Dorina Varner, CGO; Trevor A. : 
Wingard, Warden, SCI-SMR; : 
Brian Hyde, CHCA at SCI-SMR; : 
Marlene Enedy, RN, ICN, : 
at SCI-SMR : 

# O R D E R

AND NOW, this 28th day of July, 2016, the order of the Somerset County Court of Common Pleas dated December 4, 2015, at No. 714 CIV 2015 is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge